**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| H. SCOTT GURVEY and AMY R. GURVEY, | |
| Plaintiffs, | Civ. No. 06-1779(DRD) |
| v. | **O P I N I O N** |
| FIXZIT NATIONAL INSTALL SERVICES, INC., STEVE LEVI, JOSEPH M. RUTKOSKI, SR., JIM LAMBERTI HEATING, ELECTRICAL & AIR CONDITIONING, JIM LAMBERTI and DOES 1-X inclusive, | |
| Defendants. | |

*Appearances by:*

Amy R. Gurvey, Esq,
H. Scott Gurvey
917 Mountain Avenue
Mountainside, NJ 07092

　　　*Plaintiffs pro se*

BRILL & ASSOCIATES, P.C.
by:　　Corey M. Reichardt, Esq.
111 John Street, Suite 1070
New York, NY 10038

　　　*Attorney for Lamberti Defendants*

**DEBEVOISE, Senior District Judge**

This dispute arises over the defective design and installation of an air conditioning system. Plaintiffs H. Scott Gurvey and Amy Gurvey have brought suit against all parties involved in installing and servicing air conditioners in their Upper Montclair New Jersey home. Plaintiffs allege that leaks from a defective air conditioning system have caused extensive water damage to their house and led to a worsening of Plaintiff Amy Gurvey's pre-existing medical problems. Plaintiffs seek damages and specific performance under their breach of contract, fraudulent inducement and negligence claims.

Presently before the court are motions for summary judgment filed by the Gurvey Plaintiffs and Defendants Jim Lamberti and Jim Lamberti Heating, Electrical & Air Conditioning (the "Lamberti Defendants"). For the reasons set forth below, Plaintiffs' motion is DENIED. The Lamberti Defendants' motion is GRANTED.

## I.       BACKGROUND

The essential chronology of this case is not in dispute. In the spring of 2002, Plaintiffs contracted with Defendant, Fixzit National Install Services (hereinafter "Fixzit") to install an air conditioning system in their home. (Pl. Ex. 1). The contract was negotiated by Defendant Joseph Rutkoski, who at the time was the General Manager for Fixzit's operations in Pennsylvania and had responsibility for projects undertaken in New Jersey. (Def. Ex. D, 18:16-19:8). The system was designed by Rutkoski, but installed in the summer of 2002 by a subcontractor named Paul Hanley. (Def. Ex. G, 37:4-7). The air conditioning system included two air conditioning units, one in the basement and one in the attic, as well as air filters, fan units, ductwork, refrigerant lines, and other components designed to collectively cool and filter the air in the house. (Def. Ex. C, 34:17-22).

Plaintiffs began to notice problems with the upstairs air conditioning unit almost immediately after moving into their home in the summer of 2002. (Def. FOF. 7). In their correspondence with Fixzit, Plaintiffs complained that the upstairs unit did not provide adequate cooling to the home and the location and design of the duct work rendered their family room unusable. (Def. Ex. C, 37:9-41:22). Plaintiffs further reported that duct work prevented the door to the furnace room in the basement from closing, causing fumes to leak. Id. Throughout the summer and fall, Plaintiffs had repeated conversations with Defendant Steve Levi, another employee of Fixzit, and the home was repeatedly visited by Rutkoski. Id. at 45:1-16.

On July 29, 2002, Fixzit wrote to Plaintiffs admitting that the upstairs unit was improperly sized. (Complaint Ex. 4) (Doc No. 1). Fixzit and/or Rutkoski further represented to Plaintiffs that they would repair the refrigerant lines in the upstairs unit and ultimately replaced at least one of the lines. Id. However the problems persisted.

In September of 2002, Defendant Fixzit hired Defendant Lamberti to inspect the Plaintiffs' air conditioning units and determine if they were working properly. (Complaint Ex. 5). He made one visit to Plaintiffs' house to check the units, during which he was accompanied by Rutkoski. (Def. Ex. H ¶¶ 4-5). When Lamberti and Rutkoski were at Plaintiffs' house, Lamberti checked the "superheat level" of the upstairs unit, which he determined was below manufacturer's specifications. Id. He added four pounds of refrigerant to correct the problem and concluded that both air conditioning units were functioning within the manufacturer's ranges on that day. Id. Lamberti did not observe any leaks or ice accumulation. Id.

Lamberti suggested to Plaintiffs that they add insulation to the attic and kneewall areas, keep certain access doors closed and run the fan on the system in "continuous mode." (Complaint Ex. 5). The invoice for the job to Fixzit was for $275.00. Id. On October 18, 2002, Plaintiffs

were provided with a copy of Lamberti's invoice and his suggestions by Rutkoski. (Def. Ex. C, 56:1-25).

The problems persisted. In May of 2003, Fixzit sent a Mr. Sorokin from Northeast HVAC, Inc. to Plaintiffs' house, who advised Plaintiffs that their cooling problems were due to the failure of a piston. (Complaint Ex. 6). On May 13, 2003, Plaintiffs received a letter from Fixzit admitting that Fixzit had neglected to install a proper piston in the system. (Complaint Ex. 7). The letter recommended that Plaintiffs add insulation to the second floor. Id. However even when the piston was replaced, the upstairs unit still continued to provide inadequate cooling. The same month, Plaintiffs contacted Carl Zacharella of Air Group Heating and Air Conditioning, Co. to evaluate the system. (Complaint Ex. 8). Zacharella concluded that the upstairs duct system was "so poorly designed" that he had "no way of knowing if the equipment works properly…."

In the summer of 2004, water began to drip from the ceiling in Plaintiffs' master bedroom. Plaintiffs determined that the upstairs air conditioning unit had frozen solid and shut down after encasing itself in ice. (Def. Ex. C, 74:7-75:6). Once the unit shut down, the ice melted, overflowing the drip tray and spilling out onto the attic floor. Id. In August of 2004 Plaintiffs arranged for a PSE&G technician to come to their home and diagnose the problem with the upstairs unit. Id. at 77:11-16. The technician advised Plaintiffs that the air conditioner had frozen due to problems with the piston. Id.

On August 23, 2004, plaintiffs wrote to Fixzit, Sorokin and the manufacturer of the system, Goodman Manufacturing, detailing the findings of the PSE&G technician. (Complaint Ex. 9). In response Fixzit sent a replacement piston. In September of 2004, Goodman Manufacturing sent Hanover Mechanical to inspect the units. (Def. Ex. C, 84:11-86:3). The

Hanover technician added coolant, cleaned filters and adjusted the piston, but advised that since it was the end of the cooling season no further work could be done. Id.

In June of 2005, Plaintiffs wrote again to Fixzit and Goodman Manufacturing about the problems with the unit. (Complaint Ex. 10). Goodman put Plaintiffs in touch with System One Heating and Air Conditioning, who came to inspect the unit. (Def. Ex. C, 88:7-18). The technician, John Guerrero determined that the duct work had been improperly sized and was inadequate for the cooling demand. Id. at 89:14-90:8. He further determined that only one of the two refrigerant lines had actually been replaced and that there were additional problems with the drainage system. Id.

On June 20, 2005 Plaintiffs wrote another letter to Fixzit summarizing Guerrero's findings and requesting that Fixzit make repairs. (Complaint Ex. 12). On June 24, 2005 Plaintiffs received a reply from Fixzit. (Complaint Ex. 13). The letter apologized for the defects in the system but blamed the problems on a subcontractor that Fixzit had used to install the equipment. Id. The letter further advised that Fixzit had filed for bankruptcy back in August of 2002 and that any litigation against Fixzit by Plaintiffs would be included in the bankruptcy proceedings. Id.

That summer, Plaintiffs retained System One to replace the ductwork, air conditioning units, and refrigerant lines and to repair the drainage for the drip pan. (Def. Ex. C, 97:6-24). On August 9, 2005 Plaintiffs wrote to Fixzit, this time threatening to sue. (Complaint Ex. 15). In the letter, Plaintiffs offered to settle their potential claim in exchange for reimbursement of the purchase price. Id.

Fixzit rejected Plaintiffs' offer. In a letter dated August 16, 2005, Fixzit advised Plaintiffs to contact its bankruptcy counsel. (Complaint Ex. 16). Fixzit also acknowledged its responsibility for the improperly sized ductwork. Id. Despite Defendant Levi's boasts that

Plaintiffs would recover only 9 cents on the dollar, Plaintiffs ultimately settled with Fixzit for the amount of $15,134.47. (Def. Ex. E). Plaintiffs also attempted to pursue their claims against Rutkoski and Levi individually but the claims were discharged in bankruptcy proceedings. (Def. Ex. F).

Plaintiffs' "expert report" from Zacharella determined that the problems with the air conditioning system were due to improper sizing of the duct system and defective installation of the air handler without proper safety controls. (Def. Ex. K). He recommended replacing the air handler and ductwork. Id.

On the basis of these facts, Plaintiffs and the Lamberti Defendants each move for summary judgment.

## II.     DISCUSSION

### A.     Standard of Review

Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Rule 56(a). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

In a motion for summary judgment, the moving party has the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case.

6

Id. at 325. If the moving party can make such a showing, then the burden shifts to the

non-moving party to present evidence that a genuine issue of fact exists and a trial is necessary.

Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a

genuine issue of material fact and do not merely suggest "some metaphysical doubt as to the

material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986).

A party must support its assertions that a fact cannot be or is genuinely disputed "by (A)

citing to particular parts of materials in the record…or (B) showing that the materials cited do

not establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact." Rule 56(c)(1). If a party "fails to properly

support an assertion of fact or fails to properly address another party's assertion of fact as

required by Rule 56(c), the court may…(2) consider the fact undisputed for purposes of the

motion…" Rule 56(e).

In deciding whether an issue of material fact exists, the Court must consider all facts and

their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal

Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to

weigh the evidence and determine the truth of the matter, but, rather, to determine whether there

is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there

are no issues that require a trial, then judgment as a matter of law is appropriate.

In their complaint, Plaintiffs plead six counts against all defendants: (1) breach of

contract; (2) negligence; (3) specific performance; (4) fraud in the inducement; (5) consequential

medical damages; and (6) attorneys fees. In connection with this motion Plaintiffs have

submitted no evidence to the Court demonstrating the Lamberti Defendants' culpability for the

problems with their air conditioning system, either in support of their own motion or in opposition to the Lamberti Defendants' motion. They instead claim that they are entitled to summary judgment as a matter of law due to spoliation of evidence by Defendant Fixzit and/or the doctrine of *res ipsa loquitur*.

Having utterly failed to provide any evidence of (i) the existence of a contract that was breached; (ii) any duty owed to Plaintiffs by the Lamberti Defendants; (iii) any breach of that duty by the Lamberti Defendants; or (iv) any manner in which the problems with Plaintiffs' air conditioning system are attributable to conduct by the Lamberti Defendants, these fact questions are considered undisputed for purposes of this motion. Consequently, Plaintiffs' case rises and falls entirely with the merits of their spoliation and *res ipsa loquitur* arguments.

**B.      Spoliation**

"Since the seventeenth century, courts have followed the rule 'omnia praesumuntur contra spoliatorem,' which means 'all things are presumed against the destroyer.'" Rosenblit v. Zimmerman, 166 N.J. 391, 401 (N.J. 2001) quoting Hirsch v. General Motors Corp., 266 N.J.Super 222, 258 (Law Div. 1993). A party who intentionally destroys evidence may be punished by "a separate tort action for fraudulent concealment, discovery sanctions, or an adverse trial inference against the party that caused the loss of evidence." Jerista v. Murray, 185 N.J. 175, 201-202 (N.J. 2005).

Plaintiffs claim that "defendants admitted to spoliation of all documents pertaining to Plaintiff's [sic] job in the Summer of 2002." (Pl. Br. 5) (emphasis removed). Plaintiffs further contend that "contractor defendants' admitted spoliation of material documents… 'mandates

instructions and sanctions in Plaintiffs' favor.'" (Pl. Br. 1) (emphasis removed). [1] This is incorrect.

As an initial matter, Plaintiffs have provided no evidence that any spoliation took place. Plaintiffs' sole proof of the alleged spoliation is the transcript of a bankruptcy proceeding in Ohio, which they do not provide.[2] Moreover, the case that Plaintiffs cite as authority for mandatory evidentiary instructions and sanctions, <u>Robertet Flavors, Inc. v. Tri-Form Const., Inc.</u>, 203 N.J. 252 (2010) is entirely inapposite. <u>Robertet</u> involved accusations of spoliation against a plaintiff who destroyed material evidence after bringing a claim. The court did not hold that "instructions and sanctions" were a mandatory remedy, noting that "we leave it to the sound discretion of the trial courts to make those decisions as justice requires." <u>Id</u>. at 285. Moreover, the judgment in that case was dismissal of claims and bar to expert testimony, not a directed verdict in favor of liability against a party.

This is a frequent theme in Plaintiffs' papers—broad assertions of damaging admissions and controlling authority backed by little or no evidence and inapposite citations to caselaw. Plaintiffs did not even bother to submit a timely Rule 56.1 statement of material facts in connection with this motion. Nor does Plaintiffs' untimely submission contain citations to documentary or testimonial evidence linking the Lamberti Defendants to any damages Plaintiffs

---

[1]     Here, as always, Plaintiffs do not bother to distinguish between any of the Defendants that they have sued in this action.

[2]     Plaintiffs cite to "Transcript from Fixzit reopened SD Oh Bankruptcy Proceedings October 30, 2008, pp. 22-30, SD Oh Case No. 02-59858…" (Pl. Br. 5). That case was terminated on April 22, 2008, and no record exists of any subsequent hearings. Plaintiffs might be referring to the hearing that transpired before that court on October 30, 2007, the transcript of which is attached to Defendants' Brief as Ex. D. However this transcript does not support a spoliation inference. While Defendant Levi testifies that "it's [his] understanding" that the original copy of Plaintiffs' contract was "shredded once we closed that office" this testimony alone does not amount to an admission of spoliation, particularly given that true and accurate copies of both that contract and other relevant documents still exist.

have suffered. Plaintiffs' statement instead repeats the same undocumented and unsubstantiated allegations of their complaint.

Moreover, even if Plaintiffs' factual assertions were taken as correct—which at this stage they cannot be—spoliation inferences are only appropriately entered against the party that actually destroyed the evidence. Tartaglia v. UBS PaineWebber Inc., 197 N.J. 81, 120 (2008) ("an act of spoliation by a third party, including a reckless one, will not often give rise to an evidentiary sanction in the trial of the case in chief, but instead will be addressed in a separate proceeding."). Indeed, it would serve no sensible purpose to punish innocent co-defendants so severely for the malfeasance of others. Given that the records in question were allegedly destroyed by the Fixzit Defendants, there is no cause to impute any spoliation inference against the Lamberti Defendants.

Finally, a spoliation inference is not a mandatory presumption, but may be accepted or rejected by the fact-finder. Jerista v. Murray, 185 N.J. 175, 203 (N.J. 2005) ("The jury is free to accept or reject [the] inference"). Even if Plaintiffs were entitled to a spoliation inference, that inference alone could not be the basis for an award of summary judgment.

Plaintiffs provide no evidence and cite to no authority that would permit this court to enter a spoliation inference against the Lamberti Defendants. Even if they had, such an inference would not entitle Plaintiffs to summary judgment. Plaintiffs' argument fails.

**C.      Res Ipsa Loquitur**

Plaintiffs further argue that "the doctrine of *res ipsa loquitur* applies to Plaintiffs' situation" and that the doctrine also entitles them to summary judgment. (Pl. Br. 6). This is incorrect.

*Res ipsa loquitur* "is a doctrine that permits, but does not require, the jury to infer negligence, effectively satisfying that element of plaintiff's proofs…." Khan v. Singh, 200 N.J. 82, 91 (N.J. 2009). It is properly applied in circumstances where "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect." Id. quoting Bornstein v. Metropolitan Bottling Co., 26 N.J. 263, 269, (N.J. 1958). *Res ipsa loquitur* permits recovery under circumstances in which the particulars of an event make negligence virtually certain but exclusive defendant control of the instrumentalities makes attribution of negligence difficult.

As a threshold matter, even where *res ipsa loquitur* applies, it is merely a "permissible presumption" that may be refuted by other evidence. Bornstein, 26 N.J. at 269. A party is not entitled to summary judgment simply by virtue of showing that the *res ipsa loquitur* doctrine is available or appropriate. See Jerista, 185 N.J. at 193 ("*res ipsa* does not shift the burden of proof to the defendant"). So even if Plaintiffs had made out the necessary showing for *res ipsa loquitur*, they would, at best, have avoided summary judgment for the Lamberti Defendants and would not be entitled to a judgment in their favor.

However Plaintiffs have not even shown the necessary factual prerequisites for *res ipsa loquitur*. In particular, the instrumentality at work here is an air conditioning system that has been installed in Plaintiffs' home for eight years. The Lamberti Defendants have never had exclusive control over the instrumentality. Indeed, the evidence demonstrates that the Lamberti Defendants had access to the air conditioner only once, for a single afternoon, in the presence of

Plaintiff H. Scott Gurvey and co-Defendant Rutoski.[3] This utterly fails to demonstrate the "exclusive control" required by the doctrine. *Res ipsa loquitur* does not apply.

### III. CONCLUSION

Plaintiffs have produced no evidence that they entered into any contract with the Lamberti Defendants. Therefore Counts One (Breach of Contract), Three (Specific Performance), and Four (Fraudulent Inducement) of Plaintiffs complaint are DISMISSED. Plaintiffs have also failed to introduce any evidence of negligence on the part of Lamberti Defendants or any evidence that they sustained any damages as a result of action or inaction on the part of the Lamberti Defendants. Consequently Count Two (Negligence) is DISMISSED. Counts Five (Medical Expenses) and Six (Attorneys' Fees), being derivative of the negligence and contract claims, are DISMISSED as well.

For the reasons set forth above, Lamberti Defendants' motion is GRANTED. Plaintiffs' motion is DENIED. Plaintiffs' complaint is DISMISSED.[4]


s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: February 8, 2011

---

[3]     Defendant Lamberti swears in his affirmation that he was in the Plaintiffs' house for 45 minutes. (Def. Ex. H, ¶ 8). Plaintiff H. Scott Gurvey testified at deposition that the inspection took between two and two and a half hours. (Def. Ex. C, 54:24-55:3) In either event, this does not approach the requirement of "exclusive control."

[4]     Defendant Fixzit was dismissed from this case on March 11, 2008. (Doc. No. 37). Defendant Levi was dismissed on January 28, 2008. (Doc. No. 36). Plaintiffs' claims against Defendant Rutkoski were discharged by the Bankruptcy Court of Middle District of Pennsylvania in an order dated March 11, 2009. (Def. Ex. F). Plaintiffs having failed to identify any of "DOES 1-X inclusive," their complaint cannot stand without the Lamberti Defendants and must be dismissed in its entirety.