**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| H. SCOTT GURVEY and AMY R. GURVEY,<br><br>      Plaintiffs,<br><br>v.<br><br>FIXZIT NATIONAL INSTALL SERVICES, INC., STEVE LEVI, JOSEPH M. RUTKOSKI, SR., JIM LAMBERTI HEATING, ELECTRICAL & AIR CONDITIONING, JIM LAMBERTI and DOES 1-X inclusive,<br><br>      Defendants. | Civ. No. 06-1779(DRD)<br><br>**O P I N I O N** |

*Appearances by:*

Amy R. Gurvey, Esq,
H. Scott Gurvey
917 Mountain Avenue
Mountainside, NJ 07092

 *Plaintiffs pro se*


BRILL & ASSOCIATES, P.C.
by: Corey M. Reichardt, Esq.
111 John Street, Suite 1070
New York, NY 10038

 *Attorney for Lamberti Defendants*

**DEBEVOISE, Senior District Judge**

This dispute arises over the defective design and installation of an air conditioning system. Plaintiffs H. Scott Gurvey and Amy Gurvey have brought suit against all parties involved in installing and servicing air conditioners in their Upper Montclair New Jersey home. Plaintiffs allege that leaks from a defective air conditioning system have caused extensive water damage to the house and led to a worsening of Plaintiff Amy Gurvey's pre-existing medical problems. Plaintiffs seek damages and specific performance under their breach of contract, fraudulent inducement and negligence claims.

Most of the original Defendants to this action have either settled, declared bankruptcy, or both. On February 8, 2011, the Court denied Plaintiffs' motion for summary judgment against Jim Lamberti and Jim Lamberti Heating, Electrical & Air Conditioning (the "Lamberti Defendants"), the last remaining Defendants to this action. The Court granted summary judgment in favor of the Lamberti Defendants.

Presently before the court is Plaintiffs' motion for reconsideration of the February 8, 2011 decision. For the reasons set forth below, Plaintiffs' motion is DENIED.

## I.     BACKGROUND

The details of this dispute are familiar to the parties and set forth in this Court's summary judgment opinion. ("Feb 2011 Op.") (Doc. No. 92). The relevant facts are as follows.

In the spring of 2002, Plaintiffs contracted with Defendant Fixzit National Install Services (hereinafter "Fixzit") to install an air conditioning system in their home. (Pl. MSJ. Ex. 1). The contract was negotiated by Defendant Joseph Rutkoski, who was a Fixzit employee. (Def. MSJ. Ex. D, 18:16-19:8). The equipment was installed that summer, and included two air conditioning units, one in the basement and one in the attic, as well as air filters, fan units,

ductwork, refrigerant lines, and other components designed to collectively cool and filter the air in the house. (Def. MSJ. Ex. C, 34:17-21). Plaintiffs began to notice problems almost immediately, complaining that the upstairs air conditioning unit did not provide adequate cooling to the home and that the location and design of the duct work rendered their family room unusable. Id. at 37:9-41:22.

In September of 2002, Defendant Fixzit hired Defendant Lamberti to inspect the Plaintiffs' air conditioning units and determine if they were working properly. (Complaint Ex. 5). He made one visit to Plaintiffs' house to check the units, during which he was accompanied by Defendant Rutkoski. (Def. MSJ. Ex. H ¶¶ 4-5). Lamberti determined that the "superheat level" of the upstairs unit was below manufacturer's specifications and added some refrigerant to correct the problem. Id. He also suggested that insulation be added to the attic and that the fan on the system be run in "continuous mode." Id. Lamberti did no other work on the air conditioners and never again had contact with the Plaintiffs home. His total bill for all work related to the Gurvey house was $275.00. Id.

The problems persisted, and a whole host of technicians and repairmen visited the home to examine the system. In May of 2003, a Mr. Sorokin from Northeast HVAC, Inc. advised Plaintiffs that their cooling problems were due to the failure of a piston. (Complaint Ex. 6). The same month, Carl Zacharella of Air Group Heating and Air Conditioning, Co. conducted an independent evaluation. Zacharella concluded that the upstairs duct system was "so poorly designed" that he had "no way of knowing if the equipment works properly…." (Complaint Ex. 8).

In the summer of 2004, water began to drip from the ceiling in Plaintiffs' master bedroom. Plaintiffs determined that the upstairs air conditioning unit had frozen solid and shut

down after encasing itself in ice. (Def. MSJ. Ex. C, 74:7-75:6). Once the unit shut down, the ice melted, overflowing the drip tray and spilling out onto the attic floor. Id. In August of 2004 Plaintiffs arranged for a PSE&G technician to come to their home and diagnose the problem with the upstairs unit. Id. at 77:11-16. The technician advised Plaintiffs that the air conditioner had frozen due to problems with the piston. Id.

For a year, Plaintiffs engaged in a bitter letter-writing campaign with Fixzit in an effort to have the air conditioning system repaired. After first blaming the subcontractor who installed the equipment (Complaint Ex. 13), Fixzit ultimately accepted responsibility for the improperly sized ductwork. (Complaint Ex. 16). However Fixzit also informed the Plaintiffs that it had declared bankruptcy and would not compensate them for the damages to their house. Id. Plaintiffs ultimately settled with Fixzit for the amount of $15,134.47. (Def. MSJ. Ex. E). Plaintiffs also attempted to pursue their claims against Rutkoski and Fixzit employee Steve Levi individually but the claims were discharged in bankruptcy proceedings. (Def. MSJ. Ex. F).

Plaintiffs moved for summary judgment against the Lamberti Defendants, but offered essentially nothing by way of evidence against them. (Doc. No. 70). Plaintiffs' "expert report" from Zacharella, which was not attached to their motion, only confirmed that the problems with the Gurvey home were not caused by the Lamberti Defendants, stating that the air conditioning system malfunctions were due to improper sizing of the ducts and defective installation of the air handler without proper safety controls. (Def. MSJ. Ex. K). Zacharella recommended replacing the air handler and ductwork. Id. Rather than provide evidence supporting their claims, Plantiffs argued that they were entitled to summary judgment on the basis of *res ipsa loquitur* and spoliation inferences. The Court denied Plaintiffs' motion, and granted summary judgment for the Lamberti Defendants.

## II.     DISCUSSION

"[I]t is well-established in this district that a motion for reconsideration is an extremely limited procedural vehicle." Resorts Int'l v. Greate Bay Hotel & Casino, 830 F. Supp. 826, 831 (D.N.J. 1992). As such, a party seeking reconsideration must satisfy a high burden, and must "rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." North River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

Since the evidence relied upon in seeking reconsideration must be "newly discovered," a motion for reconsideration may not be premised on legal theories that could have been adjudicated or evidence which was available but not presented prior to the earlier ruling. See Id. Local Civil Rule 7.1(i), which governs such motions, provides that they shall be confined to "matter[s] or controlling decisions which the party believes the Judge or Magistrate Judge has 'overlooked.'" The word "overlooked" is the dominant term, meaning that except in cases where there is a need to correct a clear error or manifest injustice, "[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration." Resorts Int'l, 830 F. Supp. at 831; see also Egloff v. N.J. Air Nat'l Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988); Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159 (D.N.J. 1988); Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

Plaintiffs' brief is disorganized and largely incoherent, but appears to allege four errors in the February 8, 2011 opinion. Plaintiffs claim that the Court improperly: (1) adopted Defendants' version of the facts; (2) held that privity was required for a breach of contract action; (3) failed to

5

evaluate Defendants' credibility; and (4) ignored admissions of spoliation and/or guilt made by Defendants. None of these arguments is persuasive, and the Court will address each in turn.

### A. Adoption of Defendants' Facts

Plaintiffs allege that the Court "improperly adopted verbatim only defendants' disputed and incomplete rendition contained in their Rule 56.1 Statement" because it found that Plaintiffs "did not *timely* submit their Rule 56.1 Statement of Facts." (Pl. Br. 4-5). Plaintiffs further allege that facts contained within Defendants' 56.1 Statement were disputed by the "facts" of their Complaint, 56.1 Statement, Expert Report, and the findings of the GC bankruptcy judges in the Southern District of Ohio and Middle District of Pennsylvania. Id. at 5.

It is difficult to know where to begin. First, the Court did not ignore Plaintiffs' 56.1 Statement, even though it was objectively untimely.[1] (Feb. 2011 Op. 9-10). However the submission was of limited use to the Court because it did not contain citations to evidence indicating disputed issues of material fact. Id. ("Nor does Plaintiffs' untimely submission contain citations to documentary or testimonial evidence linking the Lamberti Defendants to any damages Plaintiffs have suffered. Plaintiffs' statement instead repeats the same undocumented and unsubstantiated allegations of their complaint.").

Second, the allegations of Plaintiffs' complaint and Rule 56.1 Statement do not provide a basis for concluding that disputed fact issues exist. A party opposing summary judgment must support its claims that a fact cannot be disputed "by (A) citing to particular parts of materials in the record…or (B) showing that the materials cited do not establish the absence or presence of a

---

[1] Plaintiffs claim in their papers that their Rule 56.1 Statement was submitted in accordance with Judge Shipp's revised scheduling order and claim "confusion" because of the revision. (Pl. Br. 5). This is factually incorrect. (Doc. No. 66). Moreover, Plaintiffs offer no explanation for how they could have timely filed their Rule 56.1 Statement a full month after filing their motion for summary judgment. (Doc. No. 70) (Doc. No. 85). In any event, the Court nevertheless reviewed Plaintiffs' Rule 56.1 Statement before oral argument and determined that it contained the same unsubstantiated allegations as Plaintiffs' complaint.

genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Rule 56(c)(1). If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may…(2) consider the fact undisputed for purposes of the motion…" Rule 56(e). Absent evidence, a fact is not disputed simply because Plaintiffs deny it in their papers. See e.g., Sewer v. LIAT (1974) Ltd., No. 04-76, 2011 WL 635292, *1 (D. Virgin Islands Feb. 16, 2011) ("Where [plaintiff] has merely 'denied' a fact but has offered no evidence to support this denial and there is sufficient evidence to prove the fact's veracity, this Court will find there is no genuine dispute as to that fact."); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (party must introduce "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.").

Third, Plaintiffs neither properly cited nor attached any prior findings by bankruptcy judges that would have any impact on this case. Instead, Plaintiffs chose merely to assert in their moving papers and at oral argument that the bankruptcy court had concluded that the Lamberti Defendants were liable due to spoliation of evidence. (Pl. MSJ. Br. 5, 11-12). This turned out to be incorrect. Despite Plaintiffs' failure to provide the Court with the bankruptcy decisions, the Court obtained and reviewed the findings of those courts and determined that there was nothing in them that would support Plaintiffs' claims of spoliation. (Feb. 2011 Op. 9). Indeed, the court in the Rutkoski bankruptcy rejected Plaintiffs spoliation arguments, stating on the record that:

> I suppose that one could say that Mr. Rutkoski, if he were the ideal business person, might have retained more records. I understand his story is that, well, I was just an employee and I sent everything back to my employer and it wasn't my business. But I suppose it's in my view it's somewhat similar to the independent contractor/employee dichotomy that even if you should have retained more records, I don't find that there was some intentional conduct that was-- there was some certainty that that would result in harm to the plaintiffs.

<p style="margin-left:2em">In re H. Scott Gurvey et al. v. Joseph Rutkoski et al., No. 6-07-52138 (Bankr. M.D. Pa. March 11, 2010).</p>

Fourth, Plaintiffs' "expert report"[2] does not support their claim that the Lamberti Defendants had anything to do with the damage to the Gurvey house. To the contrary, the "report" concludes that the problems with the Gurvey home were caused by improper sizing of the duct system and defective installation of the air handler without proper safety controls. (Def. MSJ. Ex. K).

Last, the Court did not uncritically adopt the facts proffered by Defendants. The majority of the chronology contained in the February 8, 2011 Opinion is based on either the documents attached to Plaintiffs' initial complaint or the statements made by Plaintiff H. Scott Gurvey in his deposition. This is clear from the opinion itself, which unlike Plaintiffs' submissions, contains extensive citations to documentary and testimonial evidence. To the limited extent that evidence and testimony from Defendants was used, such evidence was uncontested by competing submissions from Plaintiffs.

### B.     Privity Required for Breach of Contract

Plaintiffs next argue that the Court improperly accepted Defendants' argument that privity of contract was required to recover damages in this case. (Pl. Br. 7). Plaintiffs argue that the Juliano v. Gaston[3] case holds subcontractors liable to homeowners for repairs even if there is no contract between them.

Once again, Plaintiffs are mistaken. The Juliano case involved a negligence action brought by a homeowner against a subcontractor for defective work. Juliano, 187 N.J. Super at

---

[2]     Plaintiffs' "expert report" is little more than a one page estimate for repairs. (Def. MSJ. Ex. K).

[3]     187 N.J. Super 491 (App. Div. 1982).

495. The Juliano court reversed an order of the lower court dismissing all claims on the grounds that there was no privity between the parties. Id. at 499. Juliano clearly stands for the widely held principle that privity is not required for a negligence action. But the Court did not dismiss Plaintiffs' negligence claims for lack of privity. The Court dismissed Plaintiffs breach of contract, breach of warranty, and fraudulent inducement claims for lack of privity. (Feb 2011 Opinion 12).[4] Plaintiffs' negligence action was dismissed because Plaintiffs offered no evidence of duty, breach, causation, or damages in connection with their motion. Id. The holding of the Juliano case does not apply.

        **C.**      **Evaluation of Defendants' Credibility**

Plaintiffs further charge that the Court erred by failing to consider "issues of credibility emanating from defendants' intentional failure to notify Plaintiffs of defendant Fixzit's Chapter 11 bankruptcy proceeding…." (Pl. Br 7). As a legal matter, this is entirely incorrect. A district court is neither required nor permitted to assess the credibility of evidence on a motion for summary judgment. Agosto v. Immigration and Naturalization Service, 436 U.S. 748, 756 (1978) ("a district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented"); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). Moreover, the Court did not grant summary judgment for Defendants based on some assessment of the credibility of their evidence. Rather the Court granted summary judgment for Defendants because Plaintiffs failed to present any evidence suggesting disputed factual issues

---

[4] Plaintiffs claim in their brief that they "provided sufficient documentary evidence of the existence of a warranty contract… and breach by Lamberti…." (Pl. Br. 12). However Plaintiffs provided no evidence of any contract **with the Lamberti Defendants** in connection with the cross motions for summary judgment.

9

necessitating trial.[5] (Feb. 2011 Opinion 7-8).

D.     **Defendants' Admissions**

Plaintiffs last contend that the Court erred by ignoring Defendants' "admissions" of spoliation. (Pl. Br. 7). As stated in the opinion, there is insufficient evidence to conclude that *any* Defendant intentionally destroyed evidence. (Feb. 2011 Op. 9). Nor is there any evidence that the Lamberti Defendants ever had material documents to destroy. There can be no justification for ordering a spoliation instruction against the Lamberti Defendants because other Defendants may have destroyed documents. Tartaglia v. UBS PaineWebber Inc., 197 N.J. 81, 120 (2008) ("an act of spoliation by a third party, including a reckless one, will not often give rise to an evidentiary sanction in the trial of the case in chief, but instead will be addressed in a separate proceeding.").

### III. CONCLUSION

For the reasons set forth above, Plaintiffs' motion is DENIED.

                                        s/ Dickinson R. Debevoise
                                        DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: March 21, 2011

---

[5]     Even if the Court were to look at credibility, it is hard to see why the Lamberti Defendants would have had any obligation to notify Plaintiffs about the Fixzit bankruptcy.